In the District Court of the United States
For the Middle District of Alabama
Northern Division

Samuel R. Gardner, II,
A.I.S. #107999,
    Plaintiff

v.

Leon Forniss, et al.,
    Defendants

Case No: 2:07-cv-1063-WKW-SRW

RECEIVED 2008 FEB -6 A 9:34
DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

Plaintiff's RESPONSE to this Hon. Court's ORDER of 28 Jan 2008
(Document #: 9-1)

Comes now Samuel R. Gardner, plaintiff pro se in above styled cause, and respectfully responds to the ORDER of this Hon. Court of 28 Jan 2008 (Document #: 9-1).

1.) Nothing in the instant submission will be either redundant or cumulative. In order to be of service to this Hon. Court with ancillary facts of record, assisting in determining appropriate action, a summary follows.

2.) Defendants required Court Action to determine whether transportation to VA Hospital would be provided. An evolution of this cause indicated such would be fruitless as plaintiff's ingress to said Hospital would be denied.

3.) Alabama Attorney General's Office referred plaintiff to "Department of Veterans Affairs, Hon. W.M. Thigpen, Esq, Regional Counsel, 1700 Clairmont Rd., Decatur, GA 30033-4032. Phone: (404)929-5851; Fax: (404)929-5870." Hon. Mr. Thigpen responded by letter of 18 Jan. 2008. An inherent discrepancy of facts in said letter, vis-à-vis plaintiff's Veterans Administration history (of record) necessitates the below summary.

History of Monetary VA Disability Benefits

4.) Plaintiff received a discharge from the U.S. Army in 1972 (or the last of 1971), yet—due to his specific special circumstances, plaintiff continued to receive full Army

pay for ca. 1½ or 2yrs. at Fountain Correctional Center, Atmore, Alabama (aka: Atmore Prison Farm).

5.) When this ceased, plaintiff wrote the VA in Mississippi (his home state) and applied for Veterans Disability Benefits due to several serious battlefield wounds and injuries, from which he still suffers.

6.) A VA or military physician came to above prison; had plaintiff taken to Atmore's "Greenlawn Hospital". Therein (in 3 trips) the doctor performed a medical examination; then lab tests; X-rays; then he performed major surgery. (N.B.: This was all done under the "Montgomery Act", and plaintiff remains under the "time-frame" benefits requirement of said Act).

7.) As a result of all the above, plaintiff began receiving one hundred percent (100%) VA Disability Benefits monetary checks ca. A.D. 1976 at Draper Prison, Elmore, Alabama, which checks were mailed to him at said prison until 1978.

8.) In 1978 a VA person came to Draper Prison and told all of the U.S. Military Veterans that our checks were now cut off, to wit: "_because the prison system takes full care of you and you do not need your check._" (In the instant submission, probative evidence will be provided, _infra_, that this is incorrect).

9.) Plaintiff saw no way to overcome the withdrawl of his benefits _vis-à-vis_ this official action, so he suffered silently.

10.) At the Bullock County Prison in Union Springs, AL, an Alabama State Representative, the Hon. Mr. Shelton, came and talked to the Veterans in order to try to get our benefits re-started. Plaintiff had no knowledge of Hon. Mr. Shelton's involvement until he came. Later, Hon. Mr. Shelton told us it had all been turned over to

-2.-

the Veterans Administration and we never heard any more of this matter from anyone. (Hon. Mr. Shelton informed me of the above by letter).

11.) In somewhat recent times two close friends (prisoners) of plaintiff said they were tired of seeing plaintiff suffer and strongly urged plaintiff to re-seek his benefits; hence, plaintiff's <u>Exhibit A</u> (original pleading) to the Warden.

---

Salient Facts Proffering the Above As A Meritorious, Good-Faith Cognizable Cause of Action

---

12.) Plaintiff has it on highly credible first-hand information and belief that there are currently prisoners in the Alabama Prison System (and in this prison) who do now receive their VA Benefits Disability checks. It appears that this is done by the VA sending ten percent (10%) of said benefits to the prisoner and the remaining ninety percent (90%) either to a relative-dependent, or into a VA-arranged escrow account to be given to the veteran upon release from prison. Prisoners thus benefitting are (as near as plaintiff can ascertain) similarly situated to plaintiff.

13.) Officer Lattimore (upon plaintiff's request to her) informed plaintiff that he currently owes four hundred fifty-nine dollars ($459.00) to the prison hospital (on-site) as "Medical Co-Pay"; probative evidence that the prison system does not meet all the needs of veterans, not even all health needs free of charge. Thus, should plaintiff receive (e.g.) a Christmas benefaction ($), the hospital would seize <u>ALL</u> until all is paid (unlike the USDC, which only requires 20% until paid). Plaintiff has this on

-3.-

information and belief; but cannot be absolute: inasmuch as he has received no such benefaction in so long.

14) Alabama State prisoners must purchase their pencils; pens; writing tablets; stamps (except for "Legal mail"); deodorant (some Ala. prisons give it if donated by Christians); razor blades (the state-issue will not remove whiskers that are tough and the depilatory is too weak); winter underclothing must be donated as well as winter headgear; over-the-counter analgesics for headaches, toothaches, etc, must be purchased or else pay $3.00 to see the nurse; athlete's foot medication must be purchased or else pay $3.00 to see the nurse; etc.. Sundries must be purchased, e.g., the prison gives us one (1) cup of coffee per week (on Sunday mornings); etc.

In plaintiff's aging years, he finds he suffers more: his 10% VA benefits would get him thru.

15) Further, plaintiff has a right to pay the multi-hundreds of dollars he owes to the US District Court from his 4 or 5 lawsuits seeking Native American rights while at "Easterling Prison"; as well as fees & costs of the instant action (his Motion To Waive Same would be withdrawn if his 10% started coming) (especially since the VA owes him "back pay" on his benefits).

### Conclusion

Plaintiff prays that this Hon. Court will take whatever appropriate action It deems proper to remedy the above anomaly.

An old man is helping plaintiff draw up the instant submission, but both he and plaintiff are ignorant of law despite his vocabulary. Therefore, plaintiff respectfully prays this Hon. Court not to

-4-

be offended when plaintiff suggests that this Action be (by Order/ Directives) modified, extended, or discretionarily amended to include as defendants: to wit: Veterans Administration; Department of Veterans Affairs; Office of Veterans Disability Benefits (noting that plaintiff is already VA-adjudged as 100% disability and for a long time *did* receive his 100% disability checks in prison, and nothing has changed to alter his conditions except the debilities of "old" age).

Plaintiff respectfully moves for appointment of Counsel.

And that defendants show cause why plaintiff's prison bills continue to mount if all his needs are met.

Lastly, plaintiff respectfully suggest that the existing defendants remain in this evolving case during its entire pendency, because non-prison doctors' ingress is sometimes considered "A security Risk"; and transportation to the Elmore County Hospital (if required, as at "Greenlawn", *supra*) may be denied otherwise.

The Ala. Prison Hospital keeps current records as to plaintiff's health, so why even need a physical since the VA said already I am 100% disabled and sent the checks.

Plaintiff's suffering is subjectively exacerbated by the fact that he is innocent-as-charged and yet has served 35+ years in prison and will remain until death.

All the above                           is true and correct according to the best of my recollection, information, and belief.

Respectfully submitted
Samuel R. Gardner II
SAMUEL R. GARDNER, II, PRO SE
AIS #107989  Staton Prison
P.O. Box 56
Elmore, AL 36025-0056

JURAT: pg. 6

(page 5)

Subscribed and sworn to before me, the undersigned Authority, this 4 day of February, 2008.

_____
Notary Public

4/10/2010
My Comm. Exp.

## Certificate of Service

As per instructions from the Dept. of Corrections Legal Dept.: I, Samuel R. Gardner, hereby certify I have served a copy of the above on both the below, properly addressed, postage prepaid, via the prison outgoing-mail box, to wit:

(As given me: no name) → "Alabama Dept. of Corrections
Legal Division
301 So. Ripley St.
P.O. Box 301501
Montgomery, AL 36130-1501"; And

Hon. Messrs. Albert S. Butler and Hon. Kim T. Thomas, Esqs.
Alabama Attorney General's Office
11 So. Union St.
Montgomery, AL 36130-0152;

this 5th day of February, 2008.

Attest: _____
Samuel R. Gardner, PSD JE
(Address: pg. 5)

-6.-

Samuel R. Gardner
PO # 27989 D2-12A
P.O. Box E Staton CF
Elmore, AL 36025-0056

MONTGOMERY AL 361
05 FEB 2008 PM 2 T

"This correspondence ...bama State Prison. This ...been evaluated, and the Al... ...ent of Corrections is not responsib... substance or content of the enclosed communication."

Hon. Clerk of the Court
United States District Court
P.O. Box 711
Montgomery, AL 36101-0711

36101+0711